# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FRANCIS ANNE D.,[1]                )
                                   )
              Plaintiff,           )
                                   )        CIVIL ACTION
v.                                 )
                                   )        No. 18-2687-JWL
ANDREW M. SAUL,[2]                 )
Commissioner of Social Security,   )
                                   )
              Defendant.           )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.    Background

Plaintiff filed applications for DIB and SSI in April 2015.  (R. 131, 664-75).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff argues that the ALJ erred in his mental residual functional capacity (RFC) assessment by failing to include all of Plaintiff's mental limitations in the mental RFC assessed and by failing to evaluate the medical opinions properly.  (Pl. Br. 22-27).  She argues the ALJ erred in his physical RFC assessment in finding her alleged back pain is not a medically determinable impairment (MDI) and by assessing exertional level first and failing to assess RFC on a function-by-function basis. Id. 27-29.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Although Plaintiff relates each of her allegations of error to the RFC assessment, her claim of error in finding that back pain is not an MDI is an allegation of error at step two of the sequential evaluation process. Therefore, the court begins with that issue.

## II.   Step Two

Plaintiff argues that her "back pain was, most certainly, a medically determinable impairment," and points out that Dr. Lieberman observed that she "exhibited slowness of gait." (Pl. Br. 27). She also asserts that she obtained an MRI of her spine two months after the ALJ's decision which "confirms" that she has

multilevel degenerati[ve] disc and joint disease in the lower thoracic and lumbar spine, multilevel mild spinal canal stenosis from T12-L1 to L4-L5 secondary to disc disease, facet, arthrosis, and ligamentum flavum thickening. Also noted was lumbar spine facet arthrosis resulting in minimal to mild bilateral neural foraminal stenosis at L2-L3.

(Pl. Br. 27). She argues that the MRI was "submitted to the Appeals Council." Id.

The Commissioner points out that the regulations require that disability may result only from an MDI which "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. The agency "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." Id. He argues that the ALJ found no medical evidence of a back impairment and no acceptable medical source diagnosed a back impairment. (Comm'r. Br. 13-14). He points out that Dr. Lieberman diagnosed only fibromyalgia and leg pain which are consistent with the ALJ's finding of neuropathy and fibromyalgia and that in any case Dr. Lieberman is a psychologist, not qualified to diagnose a physical impairment. Id. at 14. He argues that the ALJ cannot be faulted for not considering an MRI submitted to the Appeals Council. Id.

The Commissioner notes that when the ALJ decided this case on November 22, 2017, the regulations required that all evidence be provided to the ALJ (or that he be informed of the evidence) at least five business days before the hearing, with three exceptions. Id. (citing 20 C.F.R. § 404.935). He argues that the regulations required that if additional evidence is submitted to the Appeals Council, the claimant must establish

that "(1) the evidence is new, material, and relates to the period on or before the date of the hearing decision; (2) there is a reasonable probability that the additional evidence would change the outcome of the decision; and (3) there is good cause for not submitting the evidence earlier." (Comm'r Br. 15) (citing C.F.R. § 404.970). He points out that the Appeals Council did not exhibit the evidence provided to it and denied review of the ALJ's decision and argues that the MRI constituted a "minimally abnormal objective study" which is not likely to change the outcome and the court should not reverse and remand on the basis of the MRI. Id. at 16.

In her Reply, Plaintiff reiterates her earlier argument and argues for the first time that the evidence is new, material, and relates to the period on or before the date of the hearing; that there is a reasonable probability it would change the outcome of the decision; and there is good cause for not submitting it earlier. (Reply 8-9). She also argues that the Appeals Council "invited" her to submit the additional evidence. Id. at 9 (citing R. 125-27).

A.    Step Two Standard

An impairment is not considered severe at step two if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d

6

1349, 1352 (10th Cir. 1997). She need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. <u>Williams</u>, 844 F.2d at 751. However, she must show more than the mere presence of a condition or ailment. <u>Hinkle</u>, 132 F.3d at 1352 (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on a claimant's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe. <u>Hinkle</u>, 132 F.3d at 1352.

The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that she had an impairment and how severe it was during the time she alleges she was disabled. 20 C.F.R. §§ 404.1512, 416.912. Limitations attributable to impairments which are <u>not</u> medically determinable <u>must not be</u> considered at later steps. <u>Gibbons v. Barnhart</u>, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted); <u>see also</u>, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe").

The regulation explains how to establish the presence of an MDI:

Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms,

a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. §§ 404.1521, 416.921

## B.     The ALJ's Findings Relevant to this Issue at Step Two

The ALJ noted that Plaintiff:

> submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge declines to admit this evidence because the requirements of 20 CFR 404.935(b) and 416.1435(b) are not met. Specifically, there is no evidence that the claimant or her counsel were misled; that there was any physical, mental, education or linguistic limitation that prevented the claimant from submitting this evidence; that there was a serious illness; or that there was any other unusual, unexpected or unavoidable circumstance behind [sic] the claimant's control.

(R.131).

The ALJ found Plaintiff has severe impairments of obesity, neuropathy, fibromyalgia, a history of plantar fasciitis, depression, and ADHD (attention deficit hyperactivity disorder). (R. 134). He found that Plaintiff has the impairment of varicose veins which is not severe within the meaning of the Act and the regulations. Id. He explained his finding that Plaintiff has not shown an MDI causing her back pain:

> A medically determinable impairment may not be established solely based on a claimant's allegations regarding symptoms (20 CFR 404.1508, 404.1529, 416.908, and 416.929, and SSR 96-4p). There must be evidence from an "acceptable medical source" in order to establish the existence of a medically determinable impairment (20 CFR 404.1513(a), 416.913(a), and SSR 17-2p) that can reasonably be expected to produce the symptom(s). In this case, the claimant alleged that she suffers from back pain (Hearing Testimony). However, there is no objective medical evidence or diagnostic testing to support these impairments in the record prior to the claimant's date last insured. There is evidence that her back was "'tight and tender" on September 4, 2015, but her physician did not provide a diagnosis (Ex. B9F

at 9-10). Later, on March 28, 2016, she complained of 10/10 back pain in the emergency room after an auto accident (Ex. B16F at 37). However, she received relief with physical therapy (Ex. B16F). She complained of "extreme back pain" on June 7, 2016, but there is little to no evidence that this was more than a temporary condition (Ex. B18F at 42). Therefore, this impairment is non-medically determinable.

Id.

## C. Analysis

The court's review always begins with the final decision of the Commissioner—here the decision of the ALJ. As the ALJ noted, Plaintiff's allegation of symptoms (here back pain) alone is insufficient to establish an MDI. 20 C.F.R. §§ 404.1521, 416.921. Back pain is a symptom, and as such is never an impairment. However, it may result from several different impairments. In evaluating pain, as with evaluating any symptom, the question is "(1) whether [Plaintiff] established a pain-producing impairment by objective medical evidence and (2) if so, whether there is a 'loose nexus' between the proven impairment and [Plaintiff's] subjective allegations of pain." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). The ALJ said he did not find such a nexus between the back pain and Plaintiff's medically determinable impairments. (R. 134) ("there must be evidence from an 'acceptable medical source' in order to establish the existence of a medically determinable impairment that can reasonably be expected to produce the symptom(s)") (citations omitted). He discussed Plaintiff's allegations of back pain and found the unstated and unproven impairment(s) causing Plaintiff's alleged back pain is not medically determinable. Id. ("Therefore, this impairment is non-medically determinable.").

Plaintiff's argument that her back pain is an MDI does not change the above analysis. Her appeal to Dr. Lieberman's observation of "slowness of gait" attempts to rely on a sign or clinical finding (slowness of gait—Dr. Lieberman called it a "behavioral observation" (R. 899)) which may be Plaintiff's compensation to control the symptom of back pain, but "slowness of gait" is not an impairment either. Dr. Lieberman is a psychologist who, as the Commissioner points out, is not qualified to diagnose or opine on physical impairments, and to the extent her "DIAGNOSES" included "fibromyalgia, left leg pain and numbness" (R. 902), they must be recognized as Plaintiff's "reported medical ailments." (R. 898).

Plaintiff next argues that the results of an MRI done after the ALJ's decision here and presented in the first instance to the Appeals Council establishes the impairment of degenerative disc disease to which her allegation of back pain relates and should justify finding back pain is an MDI. This argument fails for several reasons.

First, back pain is a symptom not an MDI, as noted above. Second, the MRI allegedly "obtained just 2 months after the ALJ's decision" was not obtained after the ALJ's decision and was not "submitted to the Appeals Council." (Pl. Br. 27). It is not a part of the administrative record, and the court may review only evidence which is in the administrative record. Martinez v. Barnhart, 444 F.3d 1201,1207 (10th Cir. 2006); Selman v. Califano, 619 F.2d 881, 884-85 (10th Cir. 1980) ("We must decide the appeal on the record made below. We cannot consider new evidence proffered at this level, except to determine whether the case should be remanded under 42 U.S.C. § 405(g)."). The Appeals Council received six groups of "additional evidence" which it identified in

its Notice of Appeals Council Action denying Plaintiff's request for review.  (R. 1-4).

They are: (1) "treatment notes from Wyandot Center, dated February 24, 2017, through

November 10, 2017 (15 pages)" (identified in the "Court Transcript Index" at pp. 153-

67); (2) "treatment notes from The Family Conservancy, dated May 17, 2017, through

August 18, 2017 (115 pages)" (identified in the "Court Transcript Index" at pp. 364-478);

(3) "treatment notes from Kansas University Medical Center, dated December 11, 2017,

through February 15, 2018 (39 pages)" (identified in the "Court Transcript Index" at pp.

86-124); (4) "treatment notes from Wyandot Center, dated January 24, 2018 through

March 1, 2018 (11 pages)" (identified in the "Court Transcript Index" at pp. 74-84);

(5) "a letter from the University of Kansas, dated March 23, 2018 (1 page)" (identified in

the "Court Transcript Index" at p. 73); and (6) "treatment notes from University of

Kansas Hospital, dated May 23, 2018, through June 14, 2018 (66 pages)" (identified in

the "Court Transcript Index" at pp. 7-72).  The MRI results upon which Plaintiff relies

(R. 263) were not submitted to the Appeals Council.  <u>Compare</u> (R. 85) Letter from

counsel to the Appeals Council dated February 26, 2018 explaining that medical records

"have been ordered" from the University of Kansas Hospital, The Family Conservancy,

and Wyandot Center for Community Behavior which "will be submitted upon receipt."

<u>With</u> Complaint (Doc. 2) (submitted with 4 exhibits as attachments and identified as "5-

23-18 --- 6-14-18 University of Kansas Hospital – 66 pages;" "10-16-17 – 2-15-18

University of Kansas Hospital – 39 pages;" "5-17-17 – 8-18-17 The Family Conservancy

– 115 pages;" and "6-7-17 --- 2-6-18 Wyandot Center – 26 pages").  The exhibits

attached to the Complaint correlate with the additional evidence described by the Appeals Council, but do not contain the MRI report at issue here.

The MRI is contained within records identified in the Court Transcript Index as hospital records dated 5/31/2017 to 10/16/2017 from the University of Kansas Hospital and filed at pp. 168-363. (Court Transcript Index, page Index1). These records record visits made <u>before</u> the ALJ issued his decision on November 22, 2017. (R. 168-363). Each record indicates it was "Printed by Jennifer Eyring 10/21/17 1151" (about a month before the ALJ issued his decision). <u>Id.</u> The specific MRI report on which Plaintiff relies was finalized on September 29, 2017. (R. 263). Moreover, about three weeks after the records at issue were printed, and a week before the ALJ issued his decision, Plaintiff's counsel wrote a letter to the ALJ "inquiring about the status of the claim." (R. 152). Based on all these facts, along with the fact that these records were not admitted as an exhibit in the administrative record, the court finds that these records are the "additional written evidence" referred to by the ALJ as having been submitted or his having been informed of them "less than five business days before the scheduled hearing date," and he declined

> to admit this evidence because the requirements of 20 CFR 404.935(b) and 416.1435(b) are not met. Specifically, there is no evidence that the claimant or her counsel were misled; that there was any physical, mental, education or linguistic limitation that prevented the claimant from submitting this evidence; that there was a serious illness; or that there was any other unusual, unexpected or unavoidable circumstance behind [sic] the claimant's control.

(R. 131). Plaintiff makes no objection to, or allegation of error in, the ALJ's finding.

The Act anticipates cases in which evidence outside the administrative record may come to light and a claimant may desire to use that evidence. Therefore, it provides that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (sentence six). But in her Complaint Plaintiff sought judicial review of the Commissioner's final decision and remand for an immediate award of benefits or "for a proper determination" all pursuant to the court's authority under sentence four of the statute but did not ask or otherwise move for a sentence six remand to consider this evidence. (Doc. 2). In her Reply Brief Plaintiff argues for the first time that the evidence is new, material, and there is good cause for the failure to submit it in the earlier proceedings. But, even in her Reply, Plaintiff did not seek a sentence six remand, and in any case, an issue raised for the first time in a Reply brief is waived. M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768 n. 7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."); see also Fed. R. App. P. 28(a)(8)(A). It is important to note that Plaintiff is not pro se but is represented before this court (and before the agency) by a practitioner who is known to the court for his long practice representing plaintiffs in Social Security appeals. Thus, the court will not consider the evidence, and Plaintiff has not shown that back pain is an MDI or results from an MDI in the circumstances of this case.

## III.    RFC Assessment

Because the court's consideration of the ALJ's evaluation of the medical opinions will resolve most of Plaintiff's claims of error in assessing RFC, the court begins its RFC analysis here.

### A.     Evaluation of Medical Opinions

Plaintiff claims the case should be remanded because "[t]he ALJ failed to identify the weight given Dr. Allen and Dr. Duclos'[s] [(the state agency psychological consultants')] opinions. (Pl. Br. 24). She argues, moreover, that the ALJ did not explain why he did not include all the limitations opined by these psychologists in the RFC assessed and did not resolve inconsistencies between the opinions. Id. Alternatively, she argues the psychologists' opinions are not substantial evidence to support the RFC assessed because the opinions are stale and are of suspect reliability. Id. at 25. Plaintiff also argues the ALJ erred in according only partial weight to the opinion of Dr. Lieberman, the psychologist who examined Plaintiff at the request of the agency and prepared a report of her examination. Id. at 26. She argues that the reasons given to discount Dr. Lieberman's opinion are insufficient and misunderstand the evidence, and "[t]he ALJ's rationale also ignores the variability of symptoms of mental illness." Id. (citing in n.9, Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1990); and 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)).

The Commissioner argues that a common-sense reading of the decision shows that the ALJ accorded great weight to the psychologists' opinions despite not specifically stating the weight accorded. (Comm'r Br. 9). He argues that the decision is consistent with Dr. Duclos's and Dr. Allen's opinions. Id. at 7. He points out that Dr. Allen found

Plaintiff "capable of 'at least simple, repetitive work.'" (Comm'r Br. 7). He acknowledges that Dr. Duclos opined somewhat greater limitations including that Plaintiff "may require additional training for tasks that require extensive decision making and planning." Id. at 7-8. He argues that the RFC assessed by the ALJ is consistent with the opinions of the psychologists and to the extent it finds greater restrictions in Plaintiff's abilities, it is not error for an ALJ to temper an opinion in a claimant's favor. Id. at 8 (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)). The Commissioner argues that although the psychologists did not review all of the later mental health records, the ALJ did, and he "specifically considered whether their opinions were consistent with later records, and found that they were: '[These opinions are] consistent with the later treatment records from 2017.'" Id. at 10 (quoting R. 143). He points out that "Plaintiff has not challenged this finding, and has not pointed to any evidence that she claims supported additional limitations." Id. The Commissioner argues that the ALJ reasonably discounted Dr. Lieberman's opinion. He argues that the ALJ accorded only partial weight to the opinion because it is inconsistent with the treatment records and with the opinions of Dr. Duclos and Dr. Allen. Id. at 11. He argues that these reasons are supported by the record evidence. Id. at 11-12.

In her Reply Brief, Plaintiff argues that it "simply is not true" that Dr. Allen's and Dr. Duclos's opinions are consistent with "later received evidence" because the doctors were not aware of the later received evidence. (Reply 5-6). Plaintiff also reiterates her arguments from her initial brief and adds that "it is the non-examining doctor's opinion [(Dr. Allen and Dr. Duclos)] which is examined to see if it outweighs the examining [(Dr.

Lieberman)] or treating doctor's report – not the other way around." (Reply 7) (citing Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)).

### 1. Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[3] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant and provides a medical opinion. Id.

saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, the medical opinions will be weighed using all the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinions. Id.

### 2.    The ALJ's Evaluation of the Opinions at Issue

The court quotes the ALJ's evaluation of all medical opinions:

As for the opinion evidence, the undersigned has considered the Physical Residual Functional Capacity evaluation provided on December 2, 2015 by state agency medical consultant Paul H. Kindling, M.D. Based on the claimant's treatment record to that date, Dr. Kindling limited the claimant to medium work with occasional climbing of ladders, ropes and scaffolds, frequent climbing of ramps and stairs, frequent balancing, but unlimited stooping, kneeling, crouching and crawling. She would also need to avoid concentrated exposure to vibrations (Ex. B8A at 11-14). The undersigned has given this assessment no more than partial weight. Later treatment records indicate worsening pain after an auto accident (Ex. B16F at 37), as well as Dr. Corriveau's treatment records for neuropathy (Ex. B18F). Taken as a whole, and considering her obesity, these suggest that the claimant should be limited to light work with more stringent postural restrictions, including no climbing of ladders, ropes and scaffolds. The neuropathy and fibromyalgia would also merit increased environmental safeguards, including limitations on exposure to temperature extremes, unprotected heights and hazardous machinery.

The undersigned also considered the functional capacity assessment that Dr. Leiberman provided with her consultative examination results. Based on this examination, Dr. Leiberman indicated that the claimant would need assistance managing funds due to her poor math ability; would experience difficulty recalling work tasks and instructions due to memory loss; and experience "significant difficulty" sustaining focus over a workday due to per PTSD (Ex. B5F). The undersigned has given this assessment only partial weight. It is inconsistent with the mental health records on file, which indicated good immediate memory, alert and oriented appearance, and logical thought process (Ex. B19F).

Additionally, this opinion inconsistent [sic] with the Mental Residual Functional Capacity [(MRFC)] evaluations provided by state agency psychological consultant Keith L. Allen, Ph.D. on August 24, 2015 (Ex. B2A at 7-8), and generally affirmed on December 4, 2015 by state agency psychological consultant Crystal M. Duclos, Psy.D. (Ex. B8A at 16). Based on the treatment records to date, both indicated that the claimant appeared able to perform simple, routine, repetitive tasks with treatment compliance, and could adapt to most work setting changes. This is consistent with the later treatment records from 2017 (Ex. B17F and B19F). Based on these opinions, the undersigned limits the claimant to unskilled work with no more than occasional contact with others, and no high production rate jobs.

(R. 142-43).

### 3. Analysis

The ALJ accorded Dr. Lieberman's opinion "only partial weight" because it is inconsistent with the mental health records and inconsistent with the MRFC evaluations of the state agency psychologists. The evidence supports these findings.

Based upon a portion of an unidentified article (a chapter? "General Appearance," of a book? "Patient Centered Medicine 2") from the internet, Plaintiff argues that the description "alert and oriented," relied upon by the ALJ is useless, and thereby implies this basis to discount Dr. Lieberman's opinion is erroneous. (Pl. Br. 26) (citing, without further explanation, http://www.meddean.luc.edu/lumen/meded/ipm/ipm2/sem3/general_appearance.pdf.). There are two problems with this argument. First, the authority, veracity, and reliability of the document cited has not been supported by Plaintiff, and second, on its face the document cited does not stand for the proposition asserted. To be sure, the document cited states, "Descriptions like 'Well-developed, well nourished white male in no acute distress' are useless, a waste of time, provide no information, and show a profound lack of imagination on the part of the examiner," (p.3 of the .pdf document at issue), but it does not include "alert and oriented" within that pejorative and Plaintiff does not explain how the phrase "alert and oriented" is like the phrase described pejoratively in the article. Moreover, the article states that it is important to note the patient's "level of alertness," id. at p.2, and that although "[f]ormal mental status testing will be pursued later," the statement of general appearance should answer the question, "What is the person's mental status?" Id. at p.3 (bolding omitted).

That the mental health records generally described Plaintiff as "alert and oriented" is a valid basis among other bases to discount Dr. Lieberman's opinion.

Plaintiff does not address the ALJ's finding that Dr. Lieberman's opinion is inconsistent with those of the state agency psychologists, and it clearly is. The court will address those opinions shortly, but it notes that the real import of Plaintiff's arguments of error in evaluating Dr. Lieberman's opinion is that there is record evidence from which the ALJ <u>could have</u> accorded greater weight to the opinion. However, as in most Social Security disability cases the medical opinions are equivocal, but it is the ALJ's duty, not the court's, to weigh the evidence. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

Regarding the state agency psychologists' opinions, Plaintiff is correct that the ALJ did not state the specific weight accorded those opinions. (Pl. Br. 24). But the Commissioner is also correct that the ALJ based his MRFC limitations on them. (Comm'r Br. 9) (quoting R. 143). Moreover, as the court noted in <u>Keyes-Zachary</u>, where the court "can follow the adjudicator's reasoning in conducting [its] review, and can

determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting [its] review, [the court] should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) (brackets added).

As quoted above, the ALJ explained that he had limited Plaintiff "to unskilled work with no more than occasional contact with others, and no high production rate jobs" based on the state agency psychologists' opinions that Plaintiff "appeared able to perform simple, routine, repetitive tasks with treatment compliance, and could adapt to most work setting changes." (R. 143). Applying common sense, this explanation can leave no doubt that the ALJ accorded great or significant weight to these specific opinions of the psychologists, despite not using those words.

Plaintiff's other objections to these opinions fare no better. First, she argues the ALJ failed to include Dr. Duclos's opinions that Plaintiff "was moderately limited in the ability to respond appropriately to changes in the work setting," could understand and remember only simple instructions, required a simple routine, and "may require additional training for tasks that require extensive decision making and planning." (Pl. Br. 24). As to Dr. Duclos's opinion that Plaintiff may require additional training for tasks that require extensive decision making and planning, the Commissioner argues it is not inconsistent with the RFC assessed because unskilled work requires the ability to "make simple work-related decisions," but "little or no judgment," and therefore, does not require "extensive decision making and planning." (Comm'r Br. 8) (citing 20 C.F.R.

§ 404.1568(a), and Program Operations Manual System (POMS) DI 25020.010(B)(3), available at https://secure.ssa.gov/poms.NSF/lnx/0425020010), last visited Dec. 27, 2019.

Although the ALJ found Plaintiff capable of only unskilled work and the regulations explain that unskilled work requires little or no judgment, it does not appear that "judgment" directly relates to "extensive decision making and planning." In fact, the Listings of mental disorders suggest otherwise. The Listing for neurocognitive disorders, Listing 12.02, places "planning" and "decision-making" within executive functioning, whereas "judgment" is expressed as a separate mental function itself. REVISED MEDICAL CRITERIA FOR EVALUATING MENTAL DISORDERS, 2016 WL 5507752, *52 (SSA, September 26, 2016). However, POMS DI 25020.0010(B), as cited by the Commissioner clears up any confusion regarding the matter because it explains how the specific mental abilities in Section I of the MRFC form relate to the basic mental demands of work. Available at https://secure.ssa.gov/poms.NSF/lnx/0425020010). Section (B)(2) of that POMS lists the fourteen of the twenty mental abilities listed on the MRFC form that are needed for any job. POMS DI 25020.0010(B)(2). Section (B)(3) of that POMS lists the level of each of these fourteen abilities which is critical for performing unskilled work. As relevant to decision making and responding to changes in a work setting, as are at issue here, the POMS explains that unskilled work requires the ability to "make simple work-related decisions," and to "respond appropriately to changes in a (routine) work setting." POMS DI 25020.0010(B)(3)(h, m). Dr. Duclos's opinion which Plaintiff puts at issue here was, "Clmt can adapt to most changes in the work setting but may require additional training for tasks that require extensive decision

making and planning." (R. 553) (emphases added). The ALJ accorded great weight to this opinion and found that Plaintiff can perform only unskilled work. (R. 143). Since unskilled work requires responding appropriately only to changes in a <u>routine</u> work setting and making only <u>simple</u> decisions, the MRFC assessed by the ALJ is consistent with Dr. Duclos's opinion in this regard, and there was no need for further explanation.

Plaintiff's argument that the ALJ failed to include limitations that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, could understand and remember only simple instructions, and required a simple routine misunderstands assessment of Mental RFC and the difference between Section I and Section III of the MRFC form. As Plaintiff suggests, Dr. Duclos opined Plaintiff "can understand and remember [only] simple instructions" (R. 551), "can carry out [only] a simple routine," and is moderately limited in the ability to respond to changes in the work setting. <u>Id.</u> at 552.

A note in the POMS discussed above, explains the difference between the "Summary Conclusions" in Section I of the MRFC form and the "Functional Capacity Assessment" narrative in Section III of the form:

> **NOTE**: The purpose of section I ("Summary Conclusion") on the SSA-4734-F-SUP [(MRFC form)] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-Sup **that adjudicators are to use as the assessment of RFC.**

POMS DI 25020.010(B)(1) (bold in original).  Available at https://secure.ssa.gov/
poms.NSF/lnx/0425020010), last visited December 27, 2019.

Dr. Duclos's finding that Plaintiff is moderately limited in the ability to respond to changes in the work setting is a Section I conclusion as explained in the POMS note.  Dr. Duclos also provided the narrative assessment of Plaintiff's adaptation capacities and limitations discussed above, stating "Clmt can adapt to most changes in the work setting but may require additional training for tasks that require extensive decision making and planning."  (R. 553).  This narrative encompasses Dr. Duclos's assessed limitation in responding to changes in a work setting and, as already discussed is consistent with the ALJ's assessment of a limitation to unskilled work.  The ALJ included this limitation within his RFC assessment.  Consideration of the mental abilities needed for any job, and the mental abilities critical for performing unskilled work as contained in POMS DI 25020.0010(B) reveal that Dr. Duclos's assessments that Plaintiff "can understand and remember [only] simple instructions" (R. 551), and "can carry out [only] a simple routine," id. at 552, are also within the ALJ's finding that Plaintiff can perform unskilled work.  Plaintiff has not shown that the ALJ ignored or "left out" any of the psychological consultants' limitations.

Plaintiff's argument that the ALJ "ignores the variability of symptoms of mental illness," is without merit.  (Pl. Br. 26) (citing in n.9 Andler, 100 F.3d at 1393 ("Symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse."); and 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E) ("Individuals with chronic psychotic disorders commonly have their lives

structured in such a way as to minimize stress and reduce their signs and symptoms. Such individuals may be much more impaired for work than their signs and symptoms would indicate."). Plaintiff correctly quotes § 12.00(E) of the Listings of mental disorders, and although <u>Andler</u> is a decision of the Eighth Circuit not binding on this court, the court agrees that it correctly states the probabilities with mental impairments. But Plaintiff cites no record evidence from symptom-free periods or brief remissions upon which the ALJ allegedly relied while ignoring other evidence of periods of greater limitations and she does not cite evidence of structure in Plaintiff's life designed to compensate for disabling limitations. She has shown no error.

Finally, the court rejects Plaintiff's alternative argument that the opinions of the state agency psychologists should be rejected because they were stale. In support of this argument, Plaintiff cites <u>Chapo</u>, 682 F.3d 1285, arguing that the <u>Chapo</u> court "reversed in part because, even with two physical RFC assessments, the court was troubled because of the staleness of one of those assessments, and encouraged the ALJ on remand to obtain an updated exam or report." (Pl. Br. 25) (without pinpoint citation). Plaintiff does not accurately understand the <u>Chapo</u> decision. There, the court stated, "This matter must be remanded for further proceedings, wherein the ALJ must either obtain a mental RFC determination from an examining source to oppose to Dr. Vega's, articulate some other adequate basis for discounting Dr. Vega's findings, or come back to the VE with a proper hypothetical including those limitations." <u>Chapo</u>, 682 F.3d at 1292. Thereafter, the court considered the ALJ's evaluation of an opinion by a state agency consultant who had examined the plaintiff, Dr. Amin. <u>Id.</u> at 1292-93. The court found, "The relevant

medical record obviously underwent material changes in the twenty months between Dr. Amin's report and the ALJ's decision in November 2009. Yet the agency did not seek another exam." <u>Chapo</u>, 682 F.3d at 1292. The court stated that "reliance on the patently stale opinion of Dr. Amin remains troubling" but found it "need not make a definitive determination of this question." <u>Id.</u> at 1293.

The court did not remand, even in part, because of the patently stale opinion of Dr. Amin, but because of the error considering Dr. Vega's opinion. Moreover, the court found Dr. Amin's opinion was "patently stale" because the "medical record obviously underwent material changes" after the opinion was rendered and before the ALJ issued the decision. Here, the ALJ found Dr. Duclos's opinion "consistent with the later treatment records from 2017," and although Plaintiff disagrees with this finding, she has not demonstrated any material change in the treatment records.

### B.      Consideration of Mental Limitations

Plaintiff claims the ALJ erred in failing to include borderline intellectual functioning and limitations in reading, writing, and math in Plaintiff's RFC or in the hypothetical questioning of the vocational expert. (Pl. Br. 22). She claims the ALJ acknowledged her to have moderate limitations in maintaining concentration, persistence, or pace; and moderate limitations in understanding, remembering, and applying information; but failed to include these limitations in the RFC assessed. <u>Id.</u> at 22-23. She argues that "limitation to 'unskilled' work does not adequately account for limitations in this area." <u>Id.</u> at 24.

Regarding moderate limitations in maintaining concentration, persistence, or pace; and moderate limitations in understanding, remembering, and applying information, these refer to two of the four broad mental functional areas in which the Commissioner evaluates the severity of a mental impairment at steps two and three of the sequential evaluation process. The court finds that its discussion of POMS DI 25020.010(B) above controls this issue as well. As noted above, the ALJ accorded great weight to Dr. Duclos's MRFC evaluation. Dr. Duclos explained that with regard to concentration, persistence, or pace, which includes the ability to carry out detailed instructions, Plaintiff "can carry out a simple routine." (R. 551-52). With regard to understanding and memory limitations, she opined that Plaintiff "can understand and remember simple instructions." (R. 551). POMS DI 25020.010 as discussed above demonstrates that these limitations are within the abilities required for unskilled work. Vigil v. Colvin, 805 F.3d 1199, 1204 (10th Cir. 2015) cited by the Commissioner explains that restrictions to unskilled work will not account for all mental limitations but cites the POMS for the proposition that in that case (as here) the limitations assessed are within the confines of unskilled work.

Plaintiff's appeal to Dr. Lieberman's diagnoses of borderline intellectual functioning, and learning disorders in reading, math, and written expression is likewise unavailing. As noted above, the ALJ's decision to accord only partial weight to Dr. Lieberman's opinion is supported by the record evidence. Moreover, as Plaintiff acknowledged, the ALJ recognized Dr. Lieberman's diagnoses. But Plaintiff does not point to evidence of additional mental limitations resulting from these impairments which

were not considered or accounted for by the ALJ.  She has shown no error in the ALJ's mental RFC assessment.

### C.   Application of the Legal Standard

In her last allegation of error Plaintiff argues, "The ALJ failed to assess the RFC on a function-by-function basis and erroneously assessed the exertional level first."  (Pl. Br. 28).  She argues that the ALJ found that Plaintiff has the ability "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  (R. 137).  She points out that the definition of lightwork cited by the ALJ states that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls" and argues that "[i]t is impossible to determine from this definition how the ALJ assessed Damian's actual ability to walk, sit, stand, push, and pull."  (Pl. Br. 28).  Although it may have been better for the ALJ to have been more descriptive in his finding regarding light work, common sense once again requires accepting his finding in this regard.  Although the regulations to which the ALJ cites do not specify the amount of each activity required for the performance of light work, it has been long settled what that amount is.  SSR 83-10 was issued in 1983 "[t]o clarify the manner in which the medical-vocational rules in Appendix 2 of Subpart P, Regulations No. 4, address the issue of capability to do other work, and to provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules."  Titles II & XVI: Determining Capability to Do Other Work-the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, *1 (S.S.A. 1983).  That Ruling explained and clarified the definition of light work.

28

Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251, *5-6. For at least 36 years "light work" has been a term of art in Social Security disability practice with a definite meaning. The ALJ did not err in the legal standard applied to evaluating Plaintiff's exertional abilities.

To the extent Plaintiff may be arguing that the ALJ did not specify her pushing or pulling capability, that argument misses the meaning of "exertion" in evaluating an exertional level. Exertion means "The action of exerting oneself; vigorous action; effort; an instance or mode of exerting oneself." Oxford English Dictionary, available online at: https://www.oed.com/view/Entry/66117?redirectedFrom=exertion#eid (last visited December 27, 2019). The ALJ found plaintiff is capable of the effort which light work requires – a maximum exertion of 20 pounds of force and frequent exertion of 10 pounds

of force.  Therefore, he found Plaintiff is capable of exerting that force whether it be in lifting, carrying, pushing, or pulling.  There is no error in this regard.

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 31, 2019, at Kansas City, Kansas.

s:/  John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**